[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15977
Non-Argument Calendar

_____

Agency Nos. A97-852-030
A97-852-031

MIRYAM DEL SOCORRO GIRALDO VELEZ,
DANIEL SANTIAGO VILLAMIL GIRALDO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 7, 2008)**

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

PER CURIAM:

Miryam Del Socorro Giraldo Velez and her son, Daniel Santiago Villamil

Giraldo, both natives and citizens of Colombia, through counsel, seek review of the decision of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's ("IJ") order dismissing Velez's application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c).[1]

On appeal, Velez argues that the BIA misconstrued the evidence by considering her gunpoint encounter with FARC guerillas to be an isolated incident while failing to consider the cumulative effect of her family's encounters with the FARC. Additionally, she argues that the BIA failed to explain why her encounter with the FARC was not based, at least in part, on her membership in a social group, here, her family, or an imputed political opinion.

When the BIA issues a decision, we review only that decision, "except to the extent that the BIA expressly adopts the IJ's decision." *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (citation omitted). In this case, the BIA issued its own decision, so we review only that.

To the extent that the BIA's decision was based on a legal determination, our

---

[1] Velez notes in her brief that she is not challenging the BIA's determination that she was not entitled to asylum. In addition, Velez does not raise any challenge in her brief to the denial of CAT relief, and therefore abandoned the issue. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). We thus limit our discussion to the withholding of removal claim under the INA.

2

review is *de novo*.  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817 (11th Cir. 2004).  The BIA's factual determinations are reviewed under the substantial evidence test, under which we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007) (quotation and citation omitted).  The substantial evidence test is "highly deferential" and does not allow "re-weigh[ing] the evidence from scratch."  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quotation and citation omitted).  "To reverse the [BIA's] fact findings, we must find that the record not only supports reversal, but compels it."  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (quotation and citation omitted) (considering withholding of removal claim).

In a withholding of removal claim, an alien shall not be removed to a country if her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.  *Id.*; *see also* INA § 241(b)(3), 8 U.S.C. § 1231(b)(3)(A).  The alien must show that it is "more likely than not that she will be persecuted or tortured upon being returned to her country."  *Sepulveda*, 401 F.3d at 1232 (quotation and citation omitted).  This standard is more stringent than the "well-founded fear" standard for asylum.  *Id.* The applicant must show that her fear of persecution is subjectively genuine and

3

objectively reasonable. *Id.* at 1231 (quotation and citation omitted) (asylum context).

The applicant can meet this burden by showing either (1) "past persecution in h[er] country based on a protected ground," in which case a rebuttable presumption is created that her life or freedom would be threatened if she returned to her country; or (2) "a future threat to h[er] life or freedom on a protected ground in h[er] country." *Mendoza*, 327 F.3d at 1287.

In assessing persecution we consider all the evidence of mistreatment as a whole. "[W]e are required to consider the *cumulative* impact of the mistreatment the petitioner[ ] suffered." *Mejia v. U.S. Atty. Gen.*, 498 F.3d 1253, 1258 (11th Cir. 2007) (emphasis in original). While the INA does not define persecution, this Court has held that persecution is an "extreme" concept, requiring "more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231 (quotation and citation omitted). Mere harassment is not persecution. *Id.* For example, in *Sepulveda*, we held that menacing telephone calls and threats to the alien, her family members, and her colleagues, did not rise to the level of persecution. *Id.* Similarly, in *Silva*, we found no persecution where an alien received death threats in writing and by telephone. *Silva*, 448 F.3d at 1237. Isolated threats and harassment do not rise to the level of persecution.

In order for mistreatment to rise to the level of persecution, there must have

4

been more than just instances of threats and harassment. *See Ruiz v. Gonzales*, 479 F.3d 762, 766 (11th Cir. 2007). For example, in *Ruiz* we held that when the FARC beat an alien on two occasions, threatened him by telephone, and held him against his will for 18 days, there was persecution. *Id.* Because the alien was not only threatened, but was also subjected to multiple beatings and kidnaped, we found that the record compelled the conclusion "that these events cumulatively amount[ed] to past persecution." *Id.* Similarly, in *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861-62 (11th Cir. 2007), we held that the alien experienced persecution where he was threatened with unloaded weapons and then attacked and severely beaten two months later. Finally, in *Mejia*, we found that the alien experienced persecution where he was threatened on several occasions and physically attacked twice, once when a large rock was thrown at him and once when the FARC pointed a gun at him and broke his nose with the butt of a rifle. *Mejia*, 498 F.3d at 1257-58. In sum, something more is required than isolated threatening and harassing instances.

Here, substantial evidence supports the BIA's determination that Velez did not establish that it is more likely than not that she will be persecuted or tortured upon being returned Colombia. First, Velez has not presented compelling evidence that she suffered past persecution in Colombia. Velez personally had only one encounter with FARC members, when she was threatened at gunpoint to reveal her sister's whereabouts and her van was stolen. Just as death threats were not

5

sufficient for a finding of past persecution in *Silva*, the gunpoint threat against Velez, while certainly traumatic, does not compel the conclusion that she suffered past persecution. *See Silva*, 448 F.3d at 1237.

Velez has argued that the BIA erred in not considering the cumulative effect of her family's suffering. The evidence shows that Velez's sister was kidnaped by FARC members in 1994. Other members of Velez's family experienced violence, threats, and kidnaping attempts, but Velez was not certain that the FARC was involved in them. While the BIA was required to consider the cumulative impact of the mistreatment that Velez suffered, *Mejia*, 498 F.3d at 1258, she failed to produce compelling evidence that the mistreatment of her family members was indeed by the FARC. Therefore, substantial evidence supports the BIA's determination that Velez did not suffer past persecution.

Velez also has not established a future threat to her life if she returned to Colombia. Velez testified that she was threatened at gunpoint before she left Colombia, and that threats have been left for her since she came to the United States. However, the record does not reveal that Velez was ever threatened or contacted by the FARC for anything beyond information about her sister, who is now in the United States. In addition, the fact that Velez has four siblings who still reside in Medellin further indicates that Velez does not have an objectively reasonable fear of future persecution. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247,

1259 (11th Cir. 2006) (holding that evidence of family members living unharmed in the home country diminishes a well-founded fear of future persecution claim). Furthermore, Velez's family no longer participates in political groups or unions opposed by the FARC, so there is less reason to fear that such political opinion will be imputed to Velez. Finally, Velez did not know that the FARC was actually behind the threats and violence experienced by other members of her family. Thus, the record does not compel the conclusion that it is more likely than not that Velez will be persecuted if she returns to Colombia.

Velez has argued that the BIA failed to explain why her encounter with the FARC was not based, at least in part, on her membership in a social group or an imputed political opinion. A determination of whether Velez can meet the standard for a protected ground is unnecessary because substantial evidence supports the BIA's determination that Velez did not establish that it is more likely than not that she will be persecuted or tortured upon being returned to Colombia. Accordingly, Velez's petition for review is denied.

**DENIED.**